256 So.2d 105

Billy Jean Morgan DAY et al.,
Plaintiffs-Applicants,

v.

CAMPBELL–GROSJEAN ROOFING AND
SHEET METAL CORPORATION
et al., Defendants-Respondents.

No. 51029.

Dec. 13, 1971.

Rehearing Denied Jan. 17, 1972.

Gallagher & Gallagher, Andrew B. Gallagher, Shreveport, for plaintiffs-applicants.

Bodenheimer, Jones, Klotz & Simmons, G. M. Bodenheimer, Jr., Shreveport, for defendants-respondents.

TATE, Justice.

The late Wimberly Day was killed in a truck accident. Before us is the claim of his widow and one child, whose suit was dismissed by the court of appeal.

In this same suit, however, two children of the same decedent by his first marriage have, by final judgment of the same court, been awarded wrongful death benefits because of the negligence of the respondents' truckdriver. 241 So.2d 38 (La.App. 2d Cir. 1970), certiorari denied, 256 La. 1142, 241 So.2d 250 (1970).

The claim by the present widow and child was dismissed by the court of appeal at its first hearing, due to failure of their counsel to brief or to appear. 241 So.2d 38. Upon rehearing, however, this same court of appeal no longer found the defendants' truckdriver negligent. Accordingly, it dismissed the claim upon its merits. 241 So.2d 38, 41 (on rehearing).

We granted certiorari, 257 La. 265, 242 So.2d 244 (1971), because we felt it to be anomalous that, in the same suit arising out of the same accident and under the identical allegations of negligence of the same defendant driver, one set of children of the decedent should recover, while the widow and another child should be denied recovery, upon identical facts.

## I.

At the time we granted certiorari, we thought it possible that the court of appeal should have applied the "law of the case" to prevent this anomalous result.

▬▬▬ As the authorities to be cited show:

With regard to an appellate court, the "law of the case" refers to a policy by which the court will not, on a subsequent appeal, reconsider prior rulings in the same case.[1] This policy applies only against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court.[2] Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both parties, of affording a single opportunity for the argument and decision of the matter at issue.

▬▬▬▬ Nevertheless, the law-of-the-case principle is applied merely as a discretionary guide: Argument is barred where

---

1. The "law of the case" principle also relates to the binding force of the trial court rulings during later stages of the trial and to the conclusive effect of appellate rulings at the trial on remand.

2. Here, the present plaintiff widow and child were not represented by counsel at the first hearing by the court of appeal. Nevertheless, the defendants appeared and had their day in court at this first hearing, when their contentions were rejected and judgment was rendered in favor of the children of the first marriage.

there is merely doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice.[3] Further, the law-of-the-case principle is not applied so as to prevent a higher court from examining the correctness of the ruling of the previous court.

See: Louisiana State Bar Assn. v. Theard, 225 La. 98, 72 So.2d 310 (1954); City of Gretna v. Aetna Life Ins. Co., 207 La. 1085, 22 So.2d 658 (1945); Wall v. American Employers Ins. Co., 250 So.2d 172 (La.App. 1st Cir. 1971); Keller v. Thompson, 134 So.2d 395 (La.App. 3d Cir. 1961) (full discussion). See also Moore's Federal Practice, 0.404 (1965); Freeman on Judgments, Section 30 (5th Ed. 1925); Note, 62 Harv.L.Rev. 286 (1948); Note, 40 Col.L.Rev. 268 (1940); Lummus, "The 'Law of the Case' in Massachusetts", 9 Boston U.L.Rev. 225 (1929); 5B C.J.S. Appeal and Error §§ 1821–1834, 1964; 21 C.J.S. Courts § 195; 5 Am.Jur.2d "Appeal and Error", Sections 744–59.

▆▆ The present court *did* deny certiorari when defendants applied to review the

award to the children of the first marriage by the court of appeal's first opinion. 256 La. 1142, 241 So.2d 250 (1970). This ruling does not, however, reflect a prior adjudication by us on the merits of the defendants' contentions, such as would constitute the "law of the case" on the present review. The ruling was rather the application of the principle of discretionary certiorari review followed by this court, by which it will ordinarily not grant certiorari when only a question of fact is presented. Dick v. Phillips, 253 La. 366, 218 So. 2d 299 (1969); Cofield v. Burgdorf, 238 La. 297, 115 So.2d 357 (1959); Robichaux v. Realty Operators, 195 La. 70, 196 So. 23 (1940). Cf. La.R.S. 13:4450.[4]

Once this court has granted certiorari to review a decision of the court of appeal, the matter is before us for decision in the same manner as if it had been brought here by direct appeal. Article VII, Section 11, La.Const. We therefore find it more appropriate to decide the case before us on its merits, rather than to pass upon the now-abstract issue of whether the court of appeal should have applied the

---

3. As Mr. Justice Holmes stated in Messinger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912): "In the absence of statute, the phrase, 'law of the case', as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."

This decision also notes that a higher court is not bound by the "law of the case" as decided on earlier appeals by intermediate courts.

4. However, once certiorari *is* granted, this court is required to review the facts as well as the law. Article VII, Section 11, La.Const.; Rowe v. Travelers Ins. Co., 253 La. 659, 219 So.2d 486 (1969).

law-of-the-case principle under the present facts.

## II.

The facts show that the decedent Day was riding as a passenger in a pick-up truck driven by one Hamous. He was killed when Hamous braked, in order to avoid striking the defendants' truck, and lost control of the pick-up and collided with a vehicle parked on the shoulder. The defendants' truck had pulled across the four-lane highway from the shoulder and was stopped across and completely obstructing the lane in which Hamous was approaching.

The chief issue is whether the defendants' truckdriver, Wright, was negligent in pulling from the shoulder onto a high-speed highway and stopping at the median cross-over, so as to block the entire lane in which the decedent's vehicle was approaching.

█ The legal principles applicable are not seriously disputed. The primary duty to avoid a collision rests upon the driver entering a through highway from a side-road or the shoulder. However, he is not required to desist from entry so long as any traffic is in sight. He may proceed onto the main highway under circumstances when it would appear to a reasonably prudent person that his entry can be made in safety and without obstructing the passage of approaching traffic. See Zager v. Allstate Insurance Co., 211 So.2d 744 (La.App. 3d Cir. 1968) and decisions summarized therein.

The site of the accident was at Salter's Truck Stop on Highway 190 in West Baton Rouge Parish. It happened just after dark in November. This four-lane main highway runs east-west.

At the immediate place of the accident, the speed limit was 60 mph. The general highway speed limit of the highway in the area was 70 mph. However, a flashing yellow light at an intersection 200–300 feet prior to the point of impact signalled traffic to slow (to 60 mph) in the immediate area of the accident, where there was a service station on each side of the highway.

The decedent Day was riding as a passenger in Hamous's pick-up truck. Immediately before the accident, Hamous was approaching on the inside (southern-most) lane of the two westbound (i. e., north) lanes of the highway.

The defendant truckdriver, Wright, had previously parked on the north shoulder. He decided to move his truck across the highway to a better parking area for the night. He was driving a large six-wheeled flatbed truck, 28 feet in length.

After observing for traffic (Wright testified), he pulled his truck across the highway and into a cross-over through the neutral ground, intending to make a U-turn into the parking area at Salter's Truck Stop on the far side of the south (east-

bound) two lanes of the highway. However, he was unable to complete his crossing at the time, because (he testified) unexpectedly a vehicle entered the eastbound lanes of the highway from the south shoulder. The result of his stopping was that the rear of his large truck protruded across and entirely blocked the left lane of the high-speed highway, in which Hamous and the decedent were approaching.

No party any longer disputes that Hamous, the decedent's driver, was negligent in not further slackening his speed when he saw the long truck driven by Wright enter the highway from the shoulder to cross it. This negligence thus caused or contributed to the accident.

Nevertheless, the issue remains whether any negligence of Wright in obstructing the highway contributed to the accident.

On first hearing, after summarizing the facts, the court of appeal held, 241 So.2d 41: "We hold that under the circumstances disclosed by this record, Ruble Wright's act of pulling out from a parking area, angling across a heavily traveled highway, and then attempting a left turn while driving an oversize vehicle which completely blocked, as the record shows, the entire inside lane of traffic constituted negligence. Hamous was confronted with an emergency contributed to by the negligent act of Wright and his own speed. It therefore follows that Wright, his employer and insurer are responsible for the resulting damages and fatal injuries suffered by Day."

We think our brothers of the intermediate court were correct in so holding.

On the second hearing, the intermediate court adopted the trial court's reasoning that Wright had entered the highway sufficiently in advance of the pick-up truck so that his crossing it was not negligent. The court held that Wright could not be held responsible for blocking the highway because (according only to his own testimony) a vehicle entered the eastbound lanes from the south shoulder, which forced him to stop.

According to Wright, at the time he entered the highway only one vehicle was approaching from the east, i. e., Hamous's, and that was one-half mile away. As did the court of appeal on its first hearing, we doubt the accuracy of Wright's observation of the lack of on-coming traffic in the eastbound lanes and its distance from him. We also have some reservation as to his alleged inability to anticipate that traffic from the truck-stop parking area across the roadway would require him to stop before completing his crossing of the entire four-lane highway.

The independent eyewitness, Smith, witnessed the accident and testified that there were other vehicles in the eastbound lanes as well as Hamous's. The witness stated that these other vehicles in Hamous's right (north) lane prevented him from veering

sooner around the end of the defendants' truck across his path, as Hamous approached it, in the inner westbound lane which it completely obstructed, and at a place where the authorized speed was 60 mph.

The testimony of the other bystander witness (Horner) also indicates the presence of other cars in the westbound lanes. Tr. 145, 146.

Further, the accident occurred so shortly after Wright pulled into and obstructed the westbound lanes as to indicate that the Hamous vehicle was far closer than the one-half mile estimated by Wright.

██ In short, we agree with the initial court of appeal conclusion that Wright's act of entering a high-speed highway with his oversize vehicle so as to completely block one lane of the highway constituted negligence which contributed to the accident. A vehicle entering a highway from the side must yield the right-of-way to vehicles approaching so close as to constitute an immediate hazard. La.R.S. 32:124. To completely obstruct a traffic lane of a high-speed highway creates a great hazard to oncoming traffic in the immediate vicinity and is gross negligence. Cf. La.R.S. 14:96, 97; La.R.S. 32:141.

See: Miller v. Thomas, 234 So.2d 67 (La.App. 4th Cir. 1970), writ granted on quantum only, 256 La. 353, 236 So.2d 495 (1970), and quantum increased, 258 La. 285, 246 So.2d 16 (1971). Cf., Herrin v. Perry, 254 La. 933, 228 So.2d 649 (1969) and Rowe v. Travelers Insurance Co., 253 La. 659, 219 So.2d 486 (1969).

In holding Wright free of negligence, the intermediate court in part relied upon decisions which held it was not negligent for a motorist crossing a multiple-lane highway to stop at the cross-over to await passage of traffic on the far half, even though by so doing his vehicle obstructs the passage of oncoming traffic. Aside from other factual distinctions, these decisions concerned factual situations arising in urban areas;[5] they did not concern the obstruction of a high-speed highway, such as the present.

Accordingly, the defendant driver Wright, his employer (Home Transport Company) and its insurer (Transport Insurance Company), made co-defendants, are liable to the plaintiff widow and child for Wright's negligence.

### III.

██ Counsel for the plaintiff requests this court to fix the amount of the damages

---

5. Tauzier v. Travelers Insurance Company, 228 So.2d 754, 756 (La.App.4th Cir. 1969); Allen v. Baucum, 218 So.2d 662 (La.App.4th Cir. 1969); Smith v. Glass, 202 So.2d 367, 371–372 (La.App.1st Cir. 1967); Portera v. Nicolini, 140 So.2d 752 (La.App.4th Cir. 1962); Garrett v. Toye Bros. Yellow Cab Co., 58 So.2d 418 (La.App.Orl.1952).

to which they are entitled. While this court has full appellate jurisdiction of this case as though it were here on appeal, Article VII, Section 11, La.Const., nevertheless, as a matter of present preferable policy, we usually do not fix quantum where neither the trial nor the intermediate court has passed upon this question. See, e. g., Nelson v. Zurich Insurance Co., 247 La. 438, 172 So.2d 70 (1965). See also: Smith v. Hartford Accident and Indemnity Co., 254 La. 341, 223 So.2d 826 (1969). Instead, we remand the proceedings for such purpose.

### Decree

For the reasons assigned, the judgments of the district court and of the Court of Appeal, Second Circuit, are reversed insofar as they dismiss the demand of Billy Jean Morgan Day, individually and as tutrix of the minor, Wimberly Day, Jr. The case is remanded to the Court of Appeal, Second Circuit, in order that it may fix the damages to which the said plaintiff and her minor child are entitled for the wrongful death of Wimberly Day; and for such court to render judgment for this sum against the defendants, Ruble Wright, Home Transport Company, and Transport Insurance Company, in solido. All costs are to be borne by these defendants.

Reversed and remanded.

DIXON, J., is recused, having performed judicial acts in this case in another court.